IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TROY FARLEY,

    Plaintiff,

v.                                                              Civ. No. 20-19 KWR/GBW

ANDREW SAUL,
*Commissioner of the*
*Social Security Administration*,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before me pursuant to the Court's Order of Reference (*doc. 7*) and Plaintiff's Motion to Reverse and/or Remand (*doc. 17*) the decision of the Social Security Agency ("SSA") to deny Plaintiff Social Security Disability Insurance benefits ("SSDI"). For the reasons discussed below, I recommend DENYING Plaintiff's Motion, and AFFIRMING the judgment of the SSA.

**I.    PROCEDURAL HISTORY**

Plaintiff filed an initial application for SSDI on October 24, 2014, alleging disability beginning December 6, 2012. Administrative Record ("AR") at 73. Plaintiff's application was denied on initial review on April 7, 2015, and again on reconsideration on August 1, 2015. AR at 73–81, 83–91. On December 12, 2017, a hearing was held by an Administrative Law Judge ("ALJ"). AR at 44–68. The ALJ issued an unfavorable

decision on November 30, 2018. AR at 7–19. Plaintiff sought review by the Appeals Council, which denied review on October 24, 2019, making the ALJ's decision the final decision of the SSA. AR at 1. Plaintiff filed suit in this Court on January 7, 2020, seeking judicial review of the ALJ's decision. *Doc. 1*.

**II.   STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards. *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991). "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotations marks and citation omitted).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.3d at 800 (citation omitted). "The record must demonstrate that the ALJ considered all of the evidence . . . ." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (citation omitted). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010 (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent

[the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted).

**III.   ALJ EVALUATION**

    **A.  Legal Standard**

For purposes of SSDI, an individual is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 404.1520(a)(4). If the Commissioner finds an individual disabled at any step, the next step is not taken. *Id*.

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity;" (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional

capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations." *Id*. §404.1545(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. *Winfrey*, 92 F.3d at 1024 (citing *Henrie v. U.S. Dep't of Health & Hum. Servs.*, 13 F.3d 359, 361 (10th Cir. 1993)). "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Id.* (quoting Social Security Ruling ("SSR") 82-62, 1975-1982 Soc. Sec. Rep. Serv. 809 (1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, the ALJ then proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### B. The ALJ's Decision

On November 30, 2018, the ALJ issued a decision denying Plaintiff's application for SSDI benefits. *See* AR at 10–19. In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. At step one, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity from the alleged disability onset date of

December 6, 2012 through the date last insured of December 31, 2017.  AR at 12.  At step two, the ALJ found that Plaintiff had the following severe impairments: disc herniation in the cervical and thoracic spine, degenerative disc disease of the lumbar spine, radiculopathy, carpal tunnel syndrome, and obesity.  *Id*.  The ALJ also found that Plaintiff had the following non-severe impairments: post-concussion headaches and urinary incontinence.  AR at 12–13.  At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled the severity of a listed impairment.  AR at 13.

At step four, the ALJ determined that Plaintiff had the RFC to perform light work, with additional exertional limitations: "she can frequently reach and handle, and can occasionally finger bilaterally; she can occasionally kneel and crouch; she can never crawl; she can never climb ladders, ropes, or scaffolds; she can never balance; and she must avoid exposure to unprotected heights, vibration, and hazardous machinery."  AR at 13–14.  Also at step four, the ALJ found that Plaintiff was unable to perform her past relevant work.  AR at 17.  Finally, at step five, the ALJ found that Plaintiff possessed transferable skills from her past relevant work to permit her to perform other work existing in the national economy, including work as a bailiff, patrol conductor, or first-aid attendant.  AR at 17–18.  The ALJ concluded that Plaintiff was not under a disability from the alleged onset date through the date last insured.  AR at 19.

IV. **PARTIES' POSITIONS**

Plaintiff asserts that the ALJ erred by (1) assigning more weight to the opinions of non-examining state agency medical consultants than to the opinion of an examining physician; (2) failing to consider and/or discuss the evidence supporting a finding of a severe impairment of urinary incontinence; and (3) failing to explain her rejection of a limitation to standing and walking three hours in an eight-hour workday.  *See generally docs. 17, 20*.  Defendant responds that the ALJ's decision should be affirmed because it is supported by substantial evidence.  *See generally doc. 19*.

V. **ANALYSIS**

### A. The ALJ's Decision to Assign Only Some Weight to Dr. Greer's Evaluation Was Not Reversible Error.

An ALJ is required to "consider all medical opinions in the record" and discuss the weight assigned to each opinion.  *Quintero v. Colvin*, 567 F. App'x 616, 619 (10th Cir. 2014) (unpublished) (citations omitted).  To determine what weight to give to a medical opinion, the ALJ must consider the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011) (citation omitted); *see* 20 C.F.R. § 404.1527(c)(1)–(6).[1] The ALJ need not explicitly discuss all of the factors. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Where the Court can follow the ALJ's reasoning and determine that the correct legal standards were applied, merely technical omissions do not justify remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Nevertheless, the ALJ is required to consider any medical source opinion "and to provide specific, legitimate reasons for rejecting it." *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (citations omitted).

Plaintiff argues that the ALJ erred by giving more weight to the opinions of non-examining medical consultants than to the opinion of an examining medical consultant. *Doc. 17* at 20. An examining physician should normally receive more weight than a non-examining consulting physician. *Thomas v. Barnhart*, 147 F. App'x 755, 760 (10th Cir. 2005) (unpublished) (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004)). Nonetheless, the decision to assign greater weight to a non-examining physician is within the discretion of the factfinder. *Bills v. Comm'r, SSA*, 748 F. App'x 835, 841–42 (10th Cir. 2018) (unpublished) (citing SSR 96-6P, 1996 WL 374180, at *3 (July 2, 1996)). The ALJ must give adequate reasons for her decision. *Cf. Thomas*, 147 F. App'x at 760.

The ALJ gave "significant weight" to the opinions of state agency medical

---

[1] The treatment of medical opinions discussed herein applies to claims filed prior to March 27, 2017, which includes Plaintiff's.

consultants, Drs. Medina and Bijpuria. AR at 16; *see* AR at 77–78, 87–88. The ALJ noted that these opinions were supported by the medical evidence; however, the ALJ also noted that the medical evidence supported a greater limitation in fingering due to Plaintiff's carpal tunnel syndrome. AR at 16. At the conclusion of the hearing, the ALJ informed Plaintiff that she would schedule her for a consultative evaluation to aid her decision. AR at 67. Dr. Greer completed a consultative orthopedic examination of Plaintiff on February 10, 2018. AR at 762–67. Dr. Greer also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical), a standardized form for assessing a claimant's work-related limitations. AR at 770–76. The ALJ assigned "some weight" to Dr. Greer's opinion. AR at 16. The ALJ found that Dr. Greer's examination findings were "well articulated" but did not support the limitations in his Medical Sources Statement. *Id*. As an example, the ALJ found a discrepancy between Dr. Greer's finding that Plaintiff's grip strength was rated four out of five and his limitation to only occasional use of the hands for all activities, including handling and feeling. *Id.*; *see* AR at 764, 772.

Based on these findings, the ALJ relied principally on "the degree to which the physician's opinion is supported by relevant evidence," *Krauser*, 638 F.3d at 1331, in weighing the opinions of Drs. Medina, Bijpuria, and Greer. This was a legally proper factor for consideration. Because the ALJ's assignment of greater weight to the opinions of Drs. Medina and Bijpuria than to the opinion of Dr. Greer was adequately explained

and legally proper, it was not erroneous.

Plaintiff proceeds to argue that the ALJ would have assigned greater weight to Dr. Greer's opinion had she considered critical evidence in the record. *Doc. 17* at 20–22. The precise nature of this asserted error is unclear. Plaintiff brings this error under the same discussion as his claim of error in the weights assigned to the medical opinion. *See id.* Defendant contends that Plaintiff is presenting a substantial-evidence argument "in the guise of an argument about legal error" to obtain a more favorable standard of review. *Doc. 19* at 8 (citation omitted).

I agree that Plaintiff's arguments concerning the ALJ's failure to consider certain pieces of evidence call for substantial-evidence review. Under this standard, the ALJ need not discuss every piece of evidence that she has considered. *Clifton*, 79 F.3d at 1009–10 (citation omitted). However, she may not "pick and choose among medical reports" and discuss only those portions of the evidence most favorable to a finding of nondisability. *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (citation omitted). Rather, she "must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Clifton*, 79 F.3d at 1010 (citations omitted).

Among the evidence that Plaintiff contends was not considered by the ALJ are records from the El Paso Pain Relief Center showing that Plaintiff presented with hypertonicity and pain in the neck and upper back and underwent treatments including

9

traction, electrical muscle stimulation, hypothermal therapy, and adjustment. *Doc. 17* at 20 (citing AR at 329–46). The evidence cited by Plaintiff dates from 2010 to 2011, prior to the alleged disability onset date. *See* AR at 329–46. El Paso Pain Relief Center records dating from 2013—within the alleged period of disability—*were* considered by the ALJ. *See* AR at 15 (citing, *inter alia*, AR at 315). Additionally, the ALJ considered records showing treatments similar to those Plaintiff received at El Paso Pain Relief Center, including traction and electrical muscle stimulation. *See id.* (citing, *inter alia*, AR at 465). In sum, there is no reason to believe that the ALJ failed to consider the evidence of Plaintiff's complaints of pain, physicians' findings of muscle spasms, or the various treatments Plaintiff underwent.

Plaintiff next takes issue with the ALJ failing to consider records from Alpha & Omega Wellness Center showing that Plaintiff had "90% strength loss index in both hands that, after 23 sessions, improved to 60% strength loss index." *Doc. 17* at 20 (citing AR at 553–59). However, the ALJ considered other records regarding Plaintiff's hand strength, some of which were unremarkable and some of which were consistent with the poor results from Alpha & Omega Wellness Center. *See* AR at 15–16 (citing, *inter alia*, AR at 680, 764). Plaintiff also alleges that the ALJ failed to consider records from Southwest Chiropractic, including positive/abnormal results to various tests. *Doc. 17* at 21 (citing AR at 450–52). To the contrary, the ALJ cited these records for the observation that Plaintiff experienced "limited range of motion, crepitus, tenderness, and spasms in

her neck." AR at 15 (citing, *inter alia*, AR at 450). The fact that the ALJ did not cite the specific tests that elicited these symptoms, *see* AR at 451–52, does not constitute error.

Finally, Plaintiff alleges that the ALJ failed to consider the finding of Dr. Palafox that Plaintiff's carpal tunnel syndrome is "severely symptomatic" and could benefit from surgical decompression. *Doc. 17* at 21 (citing AR at 319). To the contrary, the ALJ did consider this evidence. *See* AR at 15 (citing, *inter alia*, AR at 640[2]). Not only did the ALJ accept Dr. Palafox's finding that Plaintiff's carpal tunnel syndrome was severe (as evidenced by her step-two finding of a severe impairment), but she also specifically noted the recommendation of surgery. *Id.* ("Her provider recommended surgery to correct this impairment.") (citing AR at 640).

In sum, Plaintiff has failed to establish that the ALJ committed reversible error by failing to consider or discuss any evidence in the record. Plaintiff has also failed to establish any error in the ALJ's weighing of the medical opinions. I therefore recommend declining to remand on Plaintiff's first point of error.

### B. The ALJ's Treatment of Plaintiff's Urinary Incontinence Was Not Reversible Error.

At the second step of an ALJ's analysis, the ALJ must determine whether the claimant has established that she has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c)**.** Any error at step two of the evaluation process

---

[2] It appears that the evidence from Dr. Palafox was duplicated in the record. *Compare* AR at 319 *with* AR at 640.

will be rendered harmless if the ALJ proceeds to consider steps three through five. *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008); *Dray v. Astrue*, 353 F. App'x 147, 149 (10th Cir. 2009) (unpublished) (holding that an ALJ need find only one severe impairment at step two, and explaining that "step two is designed to weed out . . . those individuals who cannot possibly meet the statutory definition of disability") (internal quotation marks and citation omitted).

At steps four and five, "the ALJ is required to consider the effect of *all* medically determinable impairments, severe or not, in calculating the claimant's RFC." *Groberg v. Astrue*, 415 F. App'x 65, 67 (10th Cir. 2011) (unpublished). A conclusion that a given impairment is non-severe at step two does not permit an ALJ to disregard that impairment when determining the RFC at steps four and five. *Wells v. Colvin*, 727 F.3d 1061, 1068–69 (10th Cir. 2013). As part of the RFC determination, the ALJ must "consider all of the individual's symptoms . . . and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016).

At step two, the ALJ identified several severe impairments but found that Plaintiff's urinary incontinence was non-severe. AR at 12–13. The ALJ concluded from the evidence that this impairment "would have no more than a minimal effect on [Plaintiff's] ability to meet the basic demands of work activity." AR at 13 (citing 20 C.F.R. § 404.1522; SSR 85-28, 1985 WL 56856 (Jan. 1, 1985); SSR 16-3p, 2016 WL 1119029).

12

Because the ALJ proceeded to steps four and five, any theoretical error at step two was rendered harmless. *See Carpenter*, 537 F.3d at 1266.

At steps four and five, the ALJ did not discuss any evidence regarding Plaintiff's urinary incontinence in her RFC determination. *See* AR at 13–17. However, her step-two finding is sufficiently clear that she did not find it necessary to impose any limitations on the basis of this impairment: "there is no evidence that [this] impairment[] more than minimally affected [Plaintiff's] ability to perform work tasks." AR at 13. This finding is supported by substantial evidence in the record. The only records concerning Plaintiff's urinary incontinence are from 2017, the final year of Plaintiff's period of disability. AR at 748–61. The lack of medical records concerning this impairment for several years after the disability onset date supports the ALJ's finding that it had no more than a minimal impact on her ability to work.[3] Because it is possible to follow the ALJ's reasoning in declining to assess any limitations due to urinary incontinence, the ALJ's failure to specifically discuss the relevant evidence at steps four and five is the sort of "merely technical omission[]," *Keyes-Zachary*, 695 F.3d at 1166, that does not necessitate remand.

I recommend finding that the ALJ did not err by not including limitations in the RFC relating to the nonsevere impairment of urinary incontinence.

---

[3] Additionally, Plaintiff's testimony at the hearing that she has suffered from urinary incontinence her whole life supports a finding that this impairment has not affected her ability to work. *See* AR at 58.

### C. The ALJ's Decision Not to Limit Plaintiff to Occasional Standing and Walking Was Not Reversible Error.

Finally, Plaintiff claims error in the ALJ's alleged rejection of Dr. Greer's finding that "Plaintiff is limited to walking/standing for three hours in an eight-hour workday." *Doc. 17* at 24. As previously discussed, the ALJ's assignment of only "some" weight to Dr. Greer's opinion was legally proper. Accordingly, the ALJ's rejection of any particular finding by Dr. Greer is not reversible error. Nonetheless, Plaintiff contends that the ALJ erred by failing to provide "a meaningful explanation" for rejecting Dr. Greer's uncontroverted findings concerning Plaintiff's standing and walking abilities. *Id.* (citing *Wilson v. Colvin*, 541 F. App'x 869, 871 (10th Cir. 2013)).

In the narrative component of his examination, Dr. Greer evaluated Plaintiff's limitations in both standing and walking. AR at 766. He found that Plaintiff was "able to stand frequently in an 8 hour work day" and, separately, "able to walk frequently in an 8 hour work day." *Id*. As used by Dr. Greer as well as the SSA, the term "frequently" indicates the ability to engage in the activity from one-third to two-thirds of an eight-hour workday. *Id.*; SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). In his Medical Source Statement, Dr. Greer limited Plaintiff to standing for three hours in an eight-hour workday and walking for three hours in an eight-hour workday. AR at 771. As Defendant points out, the SSA's regulations define "light work" to include jobs that require "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6. In other words, a claimant can

14

perform light work if she is able to stand for three hours in an eight-hour workday *and* walk for three hours in an eight-hour workday.

In her reply, Plaintiff apparently objects to the cumulation of the standing and walking limitations. *Doc. 20* at 7. "Taking the Administration's position at face value," Plaintiff asserts, "a person could conceivably sit for eight hours, stand for eight hours, and walk for eight hours, all consecutively within an eight-hour day." *Id*. This, Plaintiff concludes, is absurd. *Id*. I cannot agree with Plaintiff's interpretation of Defendant's position. The purpose of the Medical Source Statement is to assist the SSA in determining "what an individual can still do despite" her impairments. SSR 96-5p, 1996 WL 374183, at *4 (July 2, 1996). It is entirely conceivable that one person can sit for eight hours, *or* stand for eight hours, *or* walk for eight hours in a single workday. It follows that a person who is capable of doing any of those activities for a full eight-hour workday is capable of doing each of them for less. Furthermore, the form expressly contemplates that the cumulative hours for sitting, standing, and walking might exceed the length of a standard workday. AR at 771 ("If the total time for sitting, standing and walking does not equal *or exceed* 8 hours, what activity is the individual performing for the rest of the 8 hours?") (emphasis added). I find that the most logical reading of Dr. Greer's Medical Source Statement is that Plaintiff is capable of three hours each of standing and walking, for a combined six hours in an eight-hour workday. This reading is further supported by Dr. Greer's evaluation that Plaintiff could both stand

and walk "frequently," which Plaintiff does not address.

I find no inconsistency between Dr. Greer's findings concerning Plaintiff's standing and walking abilities and the ALJ's decision to limit Plaintiff to light work. I therefore recommend rejecting Plaintiff's third point of error.

## VI. CONCLUSION

For the foregoing reasons, I find that Plaintiff has failed to establish a reversible error in the ALJ's decision to deny her application for SSDI. Therefore, I recommend that Plaintiff's Motion to Remand to Agency for Rehearing (*doc. 17*) be DENIED and the SSA's decision be AFFIRMED.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**